```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

In re                                    CV-06-1977 (CPS)

    189-30 REALTY CORP.
                                         Chapter 7
                Debtor.                  Case No. 00-10629 (DTE)
----------------------------------X
LOUIS BARBIERI,

                Appellant,

    -against-                            MEMORANDUM OPINION
                                         AND ORDER
NINA MARIE BARBIERI, 189-30 REALTY
CORP., and JOHN S. PEREIRA, ESQ. as
CASE TRUSTEE

                Appellees.
----------------------------------X
```

SIFTON, Senior Judge.

On January 21, 2000, Debtor herein, 189-30 Realty Corp., filed a voluntary petition for reorganization under Chapter 11 of the United States Code in the United States Bankruptcy Court. On January 11, 2002, the Bankruptcy Court converted this case from a proceeding under Chapter 11 to one under Chapter 7. John S. Pereira was appointed Chapter 7 Trustee.

This case is presently before this Court on appeal from an order of the Bankruptcy Court. That decision denied the application of Plaintiff-Appellant Louis Barbieri ("Barbieri" or "Plaintiff") to set aside the transfer of property from the Plaintiff to the Debtor, 189-30 Realty Corp. Nina Marie Barbieri

("Nina Barbieri") and Chapter 7 Trustee John S. Pereira ("Trustee") are the Defendants on this application. Plaintiff states that the property transfer is fraudulent and void and seeks the property's return. For the reasons that follow, the Bankruptcy Court's denial of Barbieri's application to set aside the transfer of property is affirmed.

## BACKGROUND

The following facts are drawn from the parties' submissions in relation to this appeal and from the bankruptcy record. Disputes are noted.

Plaintiff Barbieri is an inmate of the Green Haven Correctional Facility ("Green Haven") located in Duchess County, New York. Throughout the events relevant to this case, Barbieri has been serving a sentence after having been convicted of the murder of an attorney. Defendant Nina Barbieri is Barbieri's daughter. The Debtor, 189-30 Realty Corp., is a corporation organized under the laws of New York with its principal office in Flushing, Queens, New York.

Before his incarceration, Barbieri purchased real property located at 189-30 37th Avenue, Flushing, Queens, New York (the "Property") and was the record owner until January 20, 1997. The Property consists of nine one and two-family homes. In late December 1996 or early January 1997, Barbieri contacted Hector Marichal ("Marichal"), a real estate attorney and New York Notary

Public, to obtain a mortgage loan on the Property from Madison Home Equities, Inc. ("Madison") to pay off a tax lien which could have resulted in a foreclosure of the Property. Over the course of thirty years, Marichal had represented Barbieri in several real estate matters and was familiar with Barbieri's signature. Barbieri also asked Marichal to form a corporation to which Barbieri could transfer the Property. By creating such a corporation, Barbieri sought to avoid difficulties in obtaining a loan himself that might have arisen because of his felony conviction. Marichal thereafter formed the Debtor corporation 189-30 Realty Corp. in February 1997. He visited Barbieri at Green Haven on April 10, 1997 and, according to Marichal's testimony, which Barbieri disputes, Barbieri executed a Deed transferring the entire Property from Barbieri to the Debtor corporation. Marichal signed the Deed as a witness to Barbieri's signature.

Following the Deed's execution, several insignificant additions were made to the Deed. Lisa Macari, a real estate attorney related to Marichal, who was present at the closing of the loan, added the addresses of Barbieri and the Debtor to the executed Deed, and changed the date of the closing from "7th of July" to "8th of July." She also dated the acknowledgment as "June 6, 1997." The expiration date on Marichal's Notary stamp

was corrected to reflect a "7". "Louis Barbieri" was added under his signature and "Queens" was inserted in the acknowledgment.

The closing on the mortgage loan on the property took place on July 8, 1997. Nina Barbieri, Plaintiff's daughter, who was the president, director, and shareholder of the corporation, 189-30 Realty Corp. and who had a power of attorney to represent Barbieri at the closing, appeared at the closing on his behalf and on behalf of the corporation. Nina visited her father the day after the closing on July 9, 1997 and informed him that she had closed the loan. She and Marichal visited her father at Green Haven several times over the course of the next few months.

In February 2003, Plaintiff commenced proceedings before the Bankruptcy Court to declare the Property's transfer fraudulent and void. In January 2004, he also commenced a civil action in Queens County Supreme Court, alleging fraud and conspiracy against Bridge Funding, Inc. (to which Madison Home Equities, Inc. had brokered the loan), Madison Home Equities, Inc., STG Title Co., and Marichal. The Supreme Court dismissed all claims against the defendants upon the defendants' motions.

In the Bankruptcy Court proceedings, Plaintiff asserted that his signature on the Deed was a forgery. He stated that he never intended to transfer the entire Property and that he intended that only one two-family building would be transferred to the

Debtor as collateral for the loan transaction. Plaintiff claimed he did not see a copy of the Deed until 2002.

On March 7, 2006, the Bankruptcy Court denied Plaintiff's application to set aside the transfer of the property to the Debtor. The Court determined that the Deed transferring the Property was valid despite the changes in the Deed made after Plaintiff's execution of the document. The Bankruptcy Court also found that Plaintiff failed to meet his burden to prove the Deed was a forgery.

Presently before this Court is Plaintiff's appeal of the Bankruptcy Court's denial of Plaintiff's application to set aside the transfer of the Property to the Debtor.

**DISCUSSION**

Jurisdiction

This Court has jurisdiction to hear this Motion pursuant to 28 U.S.C. § 158(a)(1), which authorizes District Courts to hear appeals from final judgments, orders, and decrees of Bankruptcy Courts.

Standard of Review

When reviewing decisions of the Bankruptcy Court, District Courts apply a *de novo* standard of review to the Bankruptcy Court's conclusions of law and review a Bankruptcy Court's findings of fact under a clearly erroneous standard. *See* Fed. R. Bankr. P. 8013; *In re First Central Financial Corp.*, 377 F.3d

209, 212 (2d Cir. 2004); *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[1] *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948), *quoted in In Re Miner*, 229 B.R. 561, 565 (2d Cir. 1999). "If two views of evidence are possible, the trial judge's choice between them cannot be clearly erroneous." *In Re Miner*, 229 B.R. 561, 565 (2d Cir. 1999). Under Bankruptcy Rule 8013, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. The appellant bears the burden on appeal of demonstrating that a court's findings of fact are clearly erroneous. *Miner*, 229 B.R. at 565; *In Re Saunds*, No. 05-5725, 2006 WL 1547883, at *2 (S.D.N.Y. June 7, 2006).

<u>One Home or the Entire Property?</u>

Plaintiff alleges that the property description in the deed used at the July 8, 1997 closing, does not match the property description of his intended transfer on April 10, 1997, the date on which Plaintiff is said to have executed the Deed, and that the Bankruptcy Court failed to address this discrepancy.

---

[1] The Advisory Committee notes on Bankruptcy Rule 8013 specify that Rule 8013 "accords to the findings of a bankruptcy judge the same weight given the findings of a district judge under Rule 52 [of the Federal Rules of Civil Procedure]." Accordingly, interpretations of the "clearly erroneous" standard under Rule 52 of the Federal Rules of Civil Procedure are applicable to that standard under Bankruptcy Rule 8013.

According to Plaintiff, if he signed any deed in April, it was limited to only one of the homes on the Property. The July 8 property description includes the entire property consisting of nine homes.

Plaintiff's complaint that the Bankruptcy Court failed to address what he calls a "discrepancy" is simply rhetorical. Plaintiff's complaint did not concern a discrepancy between two deeds but rather a forgery of his signature on one. The Bankruptcy Court addressed this issue when it determined that Plaintiff had failed to prove that his signature on the July 8 deed was in fact a forgery. As the court noted, Plaintiff did not rebut prima facie evidence of a valid acknowledgment of his signature. He did not call a handwriting expert or independent third-party witnesses to corroborate his forgery allegations. *See Rock v. Rock*, 185 N.Y.S. 656 (App. Div. 1921)(requiring "proof so clear and convincing as to amount to a moral certainty" and suggesting the utility of disinterested witnesses); *see also Rivera v. Hernandez*, 715 N.Y.S.2d 749, 750 (App. Div. 2000). Apart from pointing out that the Deed did not reflect his then current address at Green Haven, Plaintiff did not offer any other evidence to rebut the presumption that his signature was authentic. The letters he sent to Marichal and Macari in July and August 1997, requesting information about the property transfer and loan closing, do not relate to the extent of the

property conveyed or otherwise support Plaintiff's contention that the Property consisted solely of one home.

The Queens County Supreme Court's ambiguous description of the property in its order dismissing Barbieri's complaint also carries no weight. In any event, because of the liberal construction courts apply to the pleadings in a motion to dismiss, the court's statements in disposing of the motion to dismiss do not constitute a determination of fact, but are simply a description of plaintiff's contentions. *See EBC I, Inc. V. Goldman Sachs & Co.*, 5 N.Y.3d 11, 19 (App. Ct. 2005) (stating that "the court must afford the pleadings [in a motion to dismiss] a liberal construction, take the allegations of the complaint as true and provide plaintiff the benefit of every possible inference" and further stating that "[w]hether a plaintiff can ultimately establish its allegations is not part of the calculus"). *See also Alex Brown & Sons, Inc. V. Marine Midland Bank, Inc.*, No. 96-2549, 1997 WL 97837, at *4 (S.D.N.Y. Mar. 6, 1997) (stating that the factual allegations set forth in an order granting motion to dismiss "are taken from the Plaintiffs' complaint and do not constitute findings of fact by the Court").

<u>Cumulative Errors</u>

Plaintiff argues that the cumulative effect of the several alterations and additions to the Deed is "so egregious that there

can remain no presumption of regularity with regard to the acknowledgment." Cumulative-error analysis ordinarily applies in criminal cases. *See e.g., United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990); *Cherry v. Fillion*, No. 01-8240, 2006 WL 657062, at *9 (E.D.N.Y. Mar. 13, 2006). Assuming that what Plaintiff contends is that a determination of the validity of the deed should be determined considering all of the circumstances surrounding its execution, the Bankruptcy Court did this.

As the Bankruptcy Court stated, the two essential requirements for valid notarization are the oral declaration of the signer and the written certificate of acknowledgment signed by a public officer attesting to the declaration. *See Newman v. Newman*, 597 N.Y.S.2d 180, 181 (App. Div. 1993). Plaintiff does not dispute the second element. The Bankruptcy Court examined the additions made to the Deed prior to closing, individually and in the aggregate, and concluded that these additions or errors were immaterial, as they clearly are. As the Bankruptcy Court stated, "[t]he fact that the acknowledgment has an incorrect date does not preclude this Court from finding that Plaintiff signed the Deed in the presence of Marichal." *See Bowers v. Duryea*, 109 N.Y.S. 756, 757 (Sup. Ct. 1908) (finding that date discrepancy "does not show that subscribing witness did not sign 'at the same time' as he witnessed the execution, and that the acknowledgment is affirmative proof that he did").

Testimonial Inconsistencies

Plaintiff asserts that the Bankruptcy Court "did not address the credibility of the witnesses," namely that of Marichal and Macari, and that the Court overlooked "blatant inconsistencies" in the witnesses' testimonies.

When reviewing decisions of a Bankruptcy Court, under Bankruptcy Rule 8013, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. The bankruptcy judge found the testimony of Marichal and Macari to be credible "despite attempted attacks on their credibility."

Plaintiff has also identified inconsistencies where none exist. Referring to the Queens County Supreme Court's order dismissing Barbieri's earlier complaint, Plaintiff states that "Madison had already agreed to the loan before the Corporation was formed" to refute Marichal's testimony that Barbieri requested the forming of a corporation. As stated above, factual findings in a previous motion to dismiss carry no weight here, but even if they did, the Queens County Supreme Court found that "Madison agreed to make the loan *provided* that Baribieri formed a corporation and transferred ownership of the 189-30 property to the corporation" (emphasis added).

Plaintiff points out that although Marichal testified at the bankruptcy hearing that he remembered Barbieri executing the

Deed, he testified at an earlier deposition that he based his recollection of the execution on the Green Haven Correctional Facility's visiting records. These statements are not inconsistent, but simply illustrate the manner in which a recollection is refreshed. Plaintiff's contention that Macari "fled to Massachusetts" to avoid testifying in this case is not borne out by the record. The hearing transcript merely shows that Macari was in Massachusetts at the time of the hearing. Plaintiff offers no other evidence to suggest that Macari's presence in that state was caused by a desire to avoid testifying.

Lack of a Handwriting Expert

Plaintiff's final argument is that because no handwriting expert was called at the hearing, the Bankruptcy Court should have itself compared the signatures of Barbieri on the Deed in question and another deed to assess the signature's authenticity. There is no requirement that a bankruptcy judge conduct such an inquiry when neither party has called a handwriting expert, nor is it clear that the Bankruptcy Judge did not do so. Civil Practice Law and Rule 4536 simply states that "[c]omparison of a disputed writing with any writing proved to the satisfaction of the court to be the handwriting of the person claimed to have made the disputed writing shall be permitted." Moreover, "[p]roof by comparison, of course, is not the only method of

proving handwriting; any witness who is familiar with a person's handwriting may give an opinion with respect to the writing in issue." Practice Commentaries, McKinney's CPLR Rule 4536. The court in *Ibaniz v. Pfeiffer*, cited by the Plaintiff, does not base its decision to compare signatures on any legal requirement, but determined to do so according to its discretion and in light of the limited evidence brought before it. *Ibaniz v. Pfeiffer*, 350 N.Y.S.2d 964 (Civ. Ct. 1973). That case shows, consistent with CPLR 4536, that a court's own comparison of signatures in dispute may be one of several tools in assessing the genuineness of a signature. In this case, Marichal, a witness who had been familiar with Barbieri's handwriting for many years, opined on the authenticity of the Deed's signature. The Bankruptcy Court's analysis of the Deed's validity was therefore sufficient to rule on the application without conducting its own handwriting analysis.[2]

**CONCLUSION**

For the reasons set forth above, the Bankruptcy Court's denial of Plaintiff-Appellant Barbieri's motion to set aside the transfer of property is affirmed.

---

[2] Even if a court were to compare the signatures, my impression of the two signatures proffered by Plaintiff, assuming they are genuine, is that they are similar. Their physical differences are not so great as to cause me to doubt the authenticity of the signature on the Deed.

The Clerk is directed to transmit a copy of the within to the parties and to the bankruptcy judge.

SO ORDERED.

Dated:   Brooklyn, New York
         September 5, 2006

                    By:  /s/ Charles P. Sifton (electronically signed)
                         United States District Judge